**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4084-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DEWAYNE R. ANDERSON,
a/k/a WAYNE R. ANDERSON,
and WAYNE ANDERSON,

     Defendant-Appellant.

_____

Submitted May 19, 2026 – Decided June 24, 2026

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 11-06-0570.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Jeffrey L. Weinstein, Designated Counsel, on the brief).

Janetta D. Marbrey, Mercer County Prosecutor, attorney for respondent (Alexander Gilbert, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dewayne R. Anderson appeals from a July 11, 2024 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm.

On January 30, 2011, at approximately 1:00 a.m., Trenton Police Department officers were conducting surveillance near 180 Walnut Avenue in Trenton. They observed defendant and his sister, co-defendant Tina Anderson, sitting on the front porch interacting with numerous other individuals and suspected they were selling controlled dangerous substances (CDS).[1]

As the officers approached, Tina threw an object through the open front door into the building. After she was detained, a detective entered the building and saw defendant running away from the basement door at the end of the hallway. When the detective looked into the basement, he saw a 9mm handgun; a quantity of suspected CDS crack cocaine in Ziploc bags; two socks containing marijuana; two digital scales; cash; packaging material; and drug paraphernalia. Defendant and Tina were arrested. When searched incident to her arrest, Tina was found to be in possession of "crack cocaine and marijuana . . . packaged for sale . . . in distributable amounts."

---

[1] Because defendant and his sister share a common surname, we refer to Tina Anderson as Tina. No disrespect is intended.

A-4084-23

Defendant and Tina were indicted and charged with multiple CDS and weapons offenses. Unfortunately, Tina died days before trial. Defendant was found guilty on all counts following a jury trial and sentenced on August 5, 2016. We affirmed defendant's conviction and sentence. State v. Anderson, No. A-4710-16 (App. Div. April 24, 2019). Our Supreme Court denied defendant's petition for certification. State v. Anderson, 240 N.J. 14 (2019).

Defendant filed a timely petition for PCR. Relevant to this appeal, he argued defense counsel was ineffective because he failed to: (1) subpoena two witnesses for trial, Camille Campbell and Cornell Pagler, who provided written statements to a defense investigator that contained exculpatory information; (2) seek the admission of those exculpatory statements as statements against interest pursuant to N.J.R.E. 803(c)(25)[2]; and (3) pursue a strategy of third-party guilt by arguing it was Tina who "actually possessed the illegal drugs."

Defendant argued that on March 30, 2011, a defense investigator, Bud Didonato, obtained a written statement from Campbell, who resided at 180 Walnut Avenue in Trenton. Campbell stated that "[o]n April 19, 2010[, she] left [her] home to go to" a casino and "left [her] keys with . . . Tina's cousin to give

___

[2] Effective July 1, 2024, N.J.R.E. 803(c)(25) was relocated to N.J.R.E. 804(b)(3).

A-4084-23

to Tina" because Tina came "to [Campbell's] house every day to 'hang[]out.'" Campbell stated "[t]he marijuana belonged to [her]." The same day, Didonato obtained a written statement from Pagler who stated "[o]n April 19, 2010[, he] was not at 180 Monmouth when police raided the house" and he would "accept responsibility for the cocaine and the weapon that police found in the house."

Over four years later, on September 10, 2015, Didonato executed a certification stating that "the date in [Campbell's] signed statement of April 19, 2010, is incorrect and should reflect the correct date of January 30, 2011." Didonato did not address the same error in Pagler's statement or the fact that the address is incorrectly identified as "180 Monmouth" in his statement.

On April 26, 2024, the court conducted an evidentiary hearing at which defendant's trial counsel testified as the only witness. Defense counsel testified that he interviewed Campbell and Pagler and determined they would not be "good exculpatory witnesses in that they both seemed to be on drugs" and were "scatterbrained as far as what they would testify to." "[E]very time [he] spoke to them . . . they were[] at least high, if not drunk."

Counsel believed Campbell and Pagler "were . . . customers" of defendant and Tina and "gave off a vibe that they were helping a friend" and "[t]here was a chance they were lying to [him]." He believed "they had an arrangement

A-4084-23

where . . . [t]hey would let [defendant and Tina] use the place to sell drugs and they would get some drugs out of it" and "would say anything . . . to support the [people] that[ were] supplying [them] with these drugs."

He decided not to serve them with subpoenas because "[t]hey already did[ not] want to come in" and he "thought that giving them a subpoena and making them come in . . . would change their testimony." Instead, he attempted to have them appear voluntarily, but they did not. If they did appear, counsel intended to "see their demeanor upon . . . arrival to see if [they] were going to call them or not. Because [he] had talked to them before and they were[ not] coherent, they were[ not] helpful." He was "concerned with putting [them] on the stand . . . because [he] did[ not] know what they would say in cross-examination."

Defense counsel entered into a stipulation with the State "that there would be no mention of Tina" because if the jury heard she was arrested with "drugs . . . on her and that being his sister and being as tight as they were" the jury would "view it as them doing business together, as . . . a team." He was concerned defendant and Tina were "there for hours" and defendant was "not there just hanging out. If [Tina was] selling drugs, [defendant was] selling drugs

A-4084-23

too." Counsel was concerned "if [he] suggested that [Tina] was complicit in any drug dealing, then it would suggest to the jury . . . [defendant] was as well."

Counsel also explained he did not attempt to introduce the statements Didonato obtained because "they[ were] a different date and [Pagler's contained] a different address" and were not exculpatory "on their face." He did not consider calling Didonato as a witness because doing so "would have subjected him to cross-examination" with the incorrect statements and the "sloppiness of his work." In addition, Didonato never corrected the errors in Pagler's statement, including that he was "talking about the wrong place in [his] statement[]."

On July 11, 2024, the court entered an order denying defendant's petition supported by a comprehensive written opinion. The court found defendant's trial counsel's "testimony to be highly credible."

The court concluded defendant's claim that counsel failed to subpoena Campbell and Pagler failed both prongs of the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). As to prong one, it determined counsel "gave an objectively reasonable explanation for [not serving subpoenas on Campbell and Pagler] that was well within the range of competence demanded of" defense counsel. As to prong two, the court concluded "their testimony was likely to hurt . . . [d]efendant rather than help

6                                                                    A-4084-23

him" because, based on counsel's testimony, they "had drug issues, came off as 'scatter-brained,' were likely to embellish their testimony in a manner that [could] hurt the defense, and could come across to jurors as . . . [d]efendant's customers who were doing his bidding in exchange for drugs and their trial testimony."

The court found defendant's claim that his counsel failed "to seek admission of [the statements] through the defense investigator" also failed both prongs of the Strickland test. It reasoned "[t]he critical inaccuracies contained in [the] statements made them virtually useless" because "the inaccuracies [would] have undermined the credibility of . . . Campbell and . . . P[a]gler" and "would have made [Didonato] appear incompetent and . . . unbelievable." The court concluded "counsel was not . . . ineffective for failing to call the investigator . . . because neither the statements [n]or his testimony would have changed the outcome of the trial."

The court "reache[d] the same conclusion with respect to [d]efendant's attack on [counsel's] strategic decision not to assert a third-party guilt defense" by casting "blame on [defendant's] recently deceased sister." It found counsel's "concern that such an approach could have backfired on his client was entirely reasonable" and defendant "failed to demonstrate that, even if the defense was

A-4084-23

asserted, it would have changed the outcome of the trial given the fact that he was arrested in close proximity to the drugs while his sister was not even inside the residence."

On appeal, defendant raises the following arguments for our consideration:

POINT I

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PURSUE A STRATEGY OF THIRD-PARTY GUILT WHEN HE DECLINED TO PRESENT EVIDENCE THAT OTHER INDIVIDUALS TOOK RESPONSIBILITY FOR THE DRUGS AND FIREARM IN QUESTION.

POINT II

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PURSUE A STRATEGY OF THIRD-PARTY GUILT WHEN HE DECLINED TO PRESENT EVIDENCE THAT TINA ANDERSON ACTUALLY POSSESSED THE DRUGS AND EXERCISED CONTROL OVER THE APARTMENT WHERE THE FIREARM AND ADDITIONAL DRUGS WERE FOUND.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). Where an evidentiary hearing has been held, we should not disturb "the PCR

court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting Nash, 212 N.J. at 540). We review any legal conclusions of the trial court de novo. Id. at 576-77; State v. Harris, 181 N.J. 391, 419 (2004).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test showing: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test). Failure to meet either prong of the Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

Under the first prong, counsel's representation must be objectively unreasonable. Pierre, 223 N.J. at 578. "The test is not whether defense counsel could have done better, but whether [they] met the constitutional threshold for effectiveness." Nash, 212 N.J. at 543. Under the "'second, and far more difficult, prong of the' Strickland standard," State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "must show that the deficient performance prejudiced the defense." State v. O'Neil,

219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687).  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).

In demonstrating that counsel's performance was deficient, a defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 689).  Further, because prejudice is not presumed, ibid., a defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding.  United States v. Cronic, 466 U.S. 648, 659 n. 26 (1984).

Informed strategic choices "are virtually unchallengeable."  Strickland, 466 U.S. at 690.  Even strategic choices made after limited investigation are afforded great deference and are assessed for reasonableness.  State v. Petrozelli, 351 N.J. Super. 14, 22 (App. Div. 2002).  Trial strategy is clearly within the discretion of competent trial counsel.  State v. Coruzzi, 189 N.J. Super. 273, 321, (App. Div. 1983), certif. denied, 94 N.J. 531 (1983).  A reviewing court

must grant substantial deference to the discretion of counsel in determining which witnesses to call at trial.  State v. Arthur, 184 N.J. 307, 321 (2005).

Having considered defendant's arguments in light of the record and these established principles, we discern no basis to disturb the PCR court's well-reasoned determination that defendant failed to satisfy the Strickland test with regard to any of his contentions.  The court fully explained the basis for its ruling in its written opinion, which included its determination that trial counsel was credible and detailed findings of fact and conclusions of law.  Accordingly, we affirm the court's denial of defendant's petition for PCR for the reasons expressed therein.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-4084-23